UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 1:10-cr-94 |
| v. | ) | |
| | ) | *Collier / Lee* |
| PATRICK M. JACKSON | ) | |

# REPORT AND RECOMMENDATION

Before the Court is the motion of Defendant Patrick M. Jackson ("Defendant") to suppress ammunition seized during the warrantless search of his bedroom [Doc. 10].[1] After considering the testimony and the parties' briefs [Doc. 11, 18, 22], I find no constitutional violation, and I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.   EVIDENCE**

   **A.   Officer Davis' Testimony**

At the hearing, the Government offered the testimony of Lewis Davis ("Officer Davis"), a patrol officer with eight years experience at the Chattanooga Police Department ("CPD"), who testified as follows: Officer Davis and another CPD officer, Curtis Penney ("Officer Penney"), responded to a residence at 2015 Raulston Street in Chattanooga after the CPD received a narcotics-related call from Rivera Abernathy ("Ms. Abernathy") around 1:50 p.m. on February 16, 2010. Upon arrival at the residence, Officer Davis spoke with Ms. Abernathy who said her daughter's boyfriend, Defendant, had been smoking marijuana in the residence, and she was tired of it. Ms. Abernathy invited the police into the house where Officer Davis immediately smelled marijuana.

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 12], and an evidentiary hearing was held on August 18, 2010. The matter is now ripe for decision.

He asked Defendant, who was present along with Ms. Abernathy's adult daughter, about the smell of marijuana. Defendant replied that he and the daughter had just smoked a blunt in his bedroom. Defendant showed Officer Davis to the bedroom where he pointed out the ashtray with the remains of a smoked marijuana blunt on a dresser in his bedroom. Officer Davis then asked Defendant whether there was more marijuana present and for consent to search the bedroom. Defendant gave the requested consent.

During the search of the bedroom, either Officer Davis found or Ms. Abernathy handed him, among other things, a black bag containing several different kinds of ammunition and two small bags of marijuana.[2] Officer Davis seized the ammunition and other items. No firearms were found. Officer Davis acknowledges the seized items were not in "plain view." Ms. Abernathy was involved in the search of the bedroom by handing items to the officers or pointing out items she believed were stolen.

Officer Davis asked Defendant who the ammunition and marijuana belonged to and Defendant admitted they were his. Defendant acknowledged he was a felon and was not allowed to possess ammunition and said he intended to sell the ammunition.

Officer Davis had been to the residence on prior police calls and had encountered Ms. Abernathy, her daughter, and Defendant at the residence. Officer Davis found Defendant to be cooperative in the past and on the occasion at issue. Officer Davis believes that Defendant fully understood his request for consent to search the bedroom and that Defendant gave a valid consent. Officer Davis did not ask Defendant to sign a consent form because he did not have a consent form

---

[2] Ms. Abernathy informed the officers that Defendant had stolen certain property seized that day, including some watches, but to Officer Davis' knowledge, none of the items have been confirmed stolen yet.

with him, but he did have access to a pen and paper.

While Officer Davis did not see the lease, he believed Ms. Abernathy lived at the residence. Defendant never told Officer Davis that Ms. Abernathy was not living there, was not allowed in the residence, was not on the lease, or was not allowed in his bedroom.[3]

### B. Defendant's Testimony

Defendant testified as follows: Defendant and his girlfriend live at the residence along with other members of his girlfriend's family, but Ms. Abernathy does not live there and is not on the lease.[4] On the day at issue, however, Ms. Abernathy was admitted to the residence by her grandson, who is the nephew of Defendant's girlfriend and who was living at the residence. Ms. Abernathy came into the Defendant's bedroom and began an altercation with her daughter in Defendant's presence. Defendant told Ms. Abernathy to leave, but she called the police instead. Defendant testified he spoke with the 911 dispatcher and explained there was no problem at the residence, but the dispatcher indicated a patrol car would be dispatched to the residence. There had been problems in the past between the daughter and Ms. Abernathy resulting in at least one incident sometime

---

[3] Officer Davis' Incident Report and the Property Receipt were admitted during his cross examination as Defendant's Exhibits 1 and 2. The Incident Report states "Ms. Jackson" (sic) resides at the location and invited police inside. Officer Davis was not asked about this typographical error during the hearing.

[4] Defendant asked for a seven day "continuance" to allow him time to obtain and file in the record a copy of the lease and the Government objected to the request. The Court refused to grant the continuance finding that Defendant offered no valid excuse for the failure to have the lease present for the duly noticed hearing on his motion. In addition, Defendant failed to explain how merely filing the lease, without proper authentication or an opportunity for the parties to take testimony concerning the lease during a hearing, would have any bearing on the issues presented by Defendant. For purposes of determining the motion to suppress, however, I have *assumed* that Ms. Abernathy is not named as a tenant on the lease. I have also *assumed* Ms. Abernathy's daughter and Defendant are the tenants named on the lease as contended by Defendant.

during 2009 where Ms. Abernathy assaulted her daughter and they were both arrested by the CPD at the residence. Defendant believes Officer Davis was the officer who arrested Ms. Abernathy and her daughter in 2009 and that Officer Davis was shown the lease during the prior incident.[5]

Defendant contends that on the day at issue he first encountered Officer Davis outside the residence on the porch where Officer Davis explained that Ms. Abernathy was complaining that Defendant was smoking marijuana in the house with her daughter. Defendant admitted to Officer Davis that he had just smoked marijuana stating he had a right to do so in his own house. He allowed Officer Davis to frisk him and then Ms. Abernathy invited Officer Davis into the residence to smell the marijuana.

Upon entry to the front room of the residence, Officer Davis said he could smell marijuana and asked Defendant where he had smoked the marijuana. Defendant admitted smoking marijuana in his bedroom and invited Officer Davis into his bedroom to show him the ashtray that had the remnants of the marijuana blunt. Officer Davis then asked where the rest of the marijuana was and Defendant denied having any additional marijuana. One of the officers asked to take the remnants of the blunt from the ashtray and indicated to Defendant any marijuana could be "swept under the rug." Defendant agreed to the removal of the remnants. Defendant contends he was then removed from the bedroom and placed in handcuffs on the sofa in the front room of the house.

Defendant saw Officer Davis go into the bedroom several times with Ms. Abernathy. Defendant denies that Officer Davis searched his bedroom saying Ms. Abernathy handed the items seized to Officer Davis. With respect to the ammunition, Defendant contends he heard Ms.

---

[5] Defendant's testimony was confusing and inconsistent regarding which officer he was referring to during a portion of his testimony. He apparently initially thought Officer Davis was Officer Penney.

4

Abernathy leave the residence at some point, and she then came back to the front room with a small black bag containing ammunition. Defendant denies the ammunition was his, denies admitting the ammunition was his, and denies telling Officer Davis that he planned to sell the ammunition. Defendant also denies he was ever asked for consent to search his bedroom or that he gave consent to search.

Defendant said he understood his rights and even gave himself his own Miranda warning at one point during the search, but he denies the officers ever gave him a Miranda warning. Defendant recited the Miranda warning during his testimony. Defendant also admitted he has several prior felony convictions and other experiences with law enforcement and that he is familiar with his rights.

## II. ANALYSIS

Defendant was indicted for being a felon in possession of ammunition [Doc. 1]. The sole argument raised in Defendant's motion is that the seized ammunition should be suppressed because the warrantless search and seizure of the ammunition from his bedroom was unconstitutional. Although not entirely clear, Defendant appears to advance two arguments for suppression of the ammunition. First, he contends he did not consent to the search. Second, he argues the search was illegal because Ms. Abernathy had no permission to be in the home or admit police to search the premises and thus the evidence must be suppressed under *Elkins v. United States*, 364 U.S. 206 (1960).

### A. Consent

The Fourth Amendment provides "[t]he right of the people to be secure in their . . . houses

. . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.[6] The Supreme Court has long recognized that "a man's home is his castle" and, specifically, that a right to be secure in one's home from intrusion is embodied by the Fourth Amendment. *Minnesota v. Carter,* 525 U.S. 83, 94 (1998) (Scalia, J., concurring) (emphasis omitted); *see United States v. Nelson*, 459 F.2d 884, 885 (6th Cir.1972) (noting that the Fourth Amendment exists to ensure the inviolability of an individual's home). Thus, the Fourth Amendment would prohibit a search of Defendant's bedroom without a proper warrant except in limited circumstances, such as when a search is conducted pursuant to consent. *See Florida v. Royer,* 460 U.S. 491, 497 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Government officials may conduct a search without a warrant or probable cause[7] based upon an individual's consent if the consent is voluntary and came from someone authorized to give it. *See United States v. Matlock*, 415 U.S. 164, 172 n.7 (1974). "It is the Government's burden, by a preponderance of the evidence, to show through clear and positive testimony that valid consent was obtained." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir 2010) (internal quotation marks omitted). Consent is valid only if it is voluntary – i.e., "unequivocal, specific and intelligently given, [and] uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008). Defendant does not argue his consent to search the bedroom was contaminated by

---

[6] "[A] defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) (citing *United States v. Sangineto-Miranda,* 859 F.2d 1501, 1510 (6th Cir.1988)). Here, the Government does not contest that Defendant had a legitimate expectation of privacy in the residence and bedroom at issue.

[7] The Government has not advocated it had probable cause for the search and seizure so the Court will not address probable cause as a basis for the entry or search.

coercion; instead, he argues he never gave consent at all.

The issue of Defendant's consent, or lack thereof, turns on a credibility determination. I **FIND** the Government has met its burden, by a preponderance of the evidence, to show through clear and positive testimony that valid consent to search the bedroom was obtained from Defendant. Officer Davis' testimony was not impeached or discredited and it was wholly credible. In contrast, Defendant's testimony was not credible; rather, it was confused and inconsistent. I **FIND** Defendant invited Officer Davis into his bedroom and gave his consent to search the bedroom.[8] Accordingly, I **CONCLUDE** Defendant's consent to the entry to and search of his bedroom was valid.

### B. Silver Platter Doctrine

When asked during the hearing to explain his reliance on *Elkins*, Defendant, though counsel, said he relied on *Elkins* with respect to the "silver platter" doctrine.[9] "The 'silver platter doctrine' was developed . . . when the Fourth Amendment did not apply to the states . . . and evidence seized pursuant to a legal search conducted by state officers, although illegal under the Fourth Amendment, could be handed over 'on a silver platter' for use in a federal criminal prosecution." *United States v. Meredith*, 107 F.3d 872, 1997 WL 73265, *8 (6th Cir.1997) (citing *United States v. Searp,* 586 F.2d 1117, 1120 (6th Cir.1978) and *Weeks v. United States,* 232 U.S. 383 (1914)). The Supreme

---

[8] While Defendant's invitation and consent were not prudent under the circumstances, the Fourth Amendment does not exist to protect criminal suspects from their imprudence; it protects them only from unreasonable police conduct. *See United States v. Lazar*, 604 F.3d 230, 237 (6th Cir. 2010) (explaining that the applicability of the exclusionary rule turns on the culpability of police conduct and the deterrent effect of exclusion).

[9] Defendant's motion and original brief contained only an incomplete citation to a single case, *Elkins*. Even after Defendant was given an opportunity to enunciate how the invocation of *Elkins* would support suppression on the facts at hand, Defendant's theory remains unclear.

Court rejected the silver platter doctrine in *Elkins* and established that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. 364 U.S. 206. *See Meredith*, 1997 WL 73265, *8 (6th Cir.1997). Merely citing *Elkins*, however, does little to support Defendant's argument because Defendant has failed to show how the search and seizure at issue violated the Fourth Amendment.

Charitably piecing together Defendant's less-than-credible testimony with his arguments, Defendant may be arguing that his consent to search his bedroom – which he denies giving – is not valid because the police made an illegal entry into his house at the invitation of Ms. Abernathy, who allegedly had no authority to admit the police or consent to a search [Doc. 22 at 2].[10] Without citation to any authority, Defendant argues that because Defendant was on the lease and Ms. Abernathy allegedly had no permission to be in the home,[11] she could not admit police to search.

Generally, any person with a reasonable expectation of privacy in the place to be searched, and any person with common authority over, or other sufficient relationship to, the place to be searched can give valid consent. *United States v. Ayoub*, 498 F.3d 532, 539-42 (6th Cir. 2007); *United States v. Burcham*, 2010 WL 3058389, at *3 (6th Cir. Aug. 4, 2010) (unpublished) ("Police may obtain consent to search a location from anyone having 'common authority over or other

---

[10] Although not cited by Defendant, Sixth Circuit precedent holds that an unlawful entry by police may invalidate consent to search under appropriate circumstances. *See e.g.*, *United States v. Buchanan*, 904 F.2d 349 (6th Cir. 2005) (consent to search invalid when given after unlawful entry into defendant's home).

[11] This argument ignores Defendant's testimony in which he admitted that Ms. Abernathy was invited into the home by a resident, her grandson, and thus was in the home with the permission of at least one resident.

8

sufficient relationship to the premises'; the defendant himself need not have given consent.") (quoting *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008))). Actual authority is not necessary, however, and the consent of someone with apparent authority will render a search permissible. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *Ayoub*, 498 F.3d at 542; *United States v. Morgan*, 435 F.3d 660, 663-64 (6th Cir. 2006); *Burcham*, 2010 WL 3058389, at *4.

Officer Davis credibly testified he believed Ms. Abernathy lived in the residence, he had encountered her at the residence in the past, and Defendant did not object to her authority to allow entry to the residence. Furthermore, Officer Davis' good-faith belief that Ms. Abernathy lived at the residence was reasonable given that her daughter and other family members lived there. Defendant's position that Officer Davis *should* have known Ms. Abernathy did not live at the residence because Office Davis allegedly had seen the lease on a prior occasion in 2009 does not overcome Officer Davis' credible testimony. Defendant's testimony on this point, as noted above, was inconsistent and confusing, and I do not credit it to call into question Officer Davis' testimony that he believed Ms. Abernathy lived at the residence.

I therefore **FIND** that even if Ms. Abernathy did not have actual authority to consent to the warrantless entry to the front room, a common room, of the residence, Officer Davis reasonably and in good faith believed Ms. Abernathy had the authority to do so. In addition, there is no evidence Defendant objected to the officers entry to the front room. *Compare Georgia v. Randolph*, 547 U.S. 103, 122-23 (2006) (if two residents are present during the search request and one expressly denies consent, the other's consent in not valid). Even if Ms. Abernathy did not have the authority, apparent or actual, to consent to a warrantless entry into Defendant's *bedroom* or consent to a search of Defendant's *bedroom*, as opposed to the front room of the house, it was Defendant who invited

9

the officers into his bedroom and consented to the search, not Ms. Abernathy.

In sum, I **FIND** the officers reasonably and in good faith relied on Ms. Abernathy's apparent authority to consent to a warrantless entry into the front room of the residence and that the officers entered and searched Defendant's bedroom with his voluntary consent. I **CONCLUDE**, under a totality-of-the-circumstances review, that the search of Defendant's bedroom was therefore reasonable and constitutional.[12]

## III. CONCLUSION

Accordingly, I **RECOMMEND**[13] that Defendant's motion to suppress [Doc. 10] be **DENIED**.

s/Susan K. Lee<br>
SUSAN K. LEE<br>
UNITED STATES MAGISTRATE JUDGE

---

[12] Defendant also denies that the bag containing the ammunition was found in his bedroom, and he implied it was instead retrieved from somewhere outside the house by Ms. Abernathy. If this version of events were to be credited, then Defendant would likely lack any reasonable expectation of privacy in the bag. *See United States v. Salvucci*, 448 U.S. 83, 85 (1980) (holding that defendants do not automatically have standing to challenge the admission of evidence they are charged with possessing, but must establish that their own Fourth Amendment rights have been violated). Defendant submitted a post-hearing brief addressing the "standing" issue, which he described as a "red hearing" (sic) [Doc. 22 at 1], but he did not cite any authority showing why Defendant would have an expectation of privacy in a bag that he claimed did not belong to him and was not found in his house. Here, however, the credible evidence shows the bag was found in Defendant's bedroom. Although Officer Davis could not remember whether he personally found the bag or whether it was handed to him by Ms. Abernathy, he testified credibly that the bag was found during his search of the bedroom.

[13] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).